462 F.2d 1102
 Application of Benedict X. DiPIAZZA, For a Writ of Habeas
Corpus Directing Henry Fritz, Warden, to Bring Up the Body
of Petitioner, Benedict X. DiPiazza, a Prisoner at Auburn
Prison to Determine the Cause of Petitioner's Detention and
Whether the Detention is Lawful, Relator-Appellant,
v.
Henry FRITZ, Warden, Respondent-Appellee.
 No. 800, Docket 72-1010.
 United States Court of Appeals,
 Second Circuit.
 Argued June 5, 1972.
Decided June 20, 1972.
 
 John E. Shaffer, Syracuse, N. Y., for relator-appellant.
 Lillian Z. Cohen, Asst. Atty. Gen. (Louis J. Lefkowitz, Atty. Gen., State of New York, Samuel A. Hirshowitz, First Asst. Atty. Gen., of counsel), for respondent-appellee.
 Before FRIENDLY, Chief Judge, and LUMBARD and MULLIGAN, Circuit Judges.
 PER CURIAM:
 
 
 1
 Benedict X. DiPiazza appeals from an order of the United States District Court for the Northern District of New York, Edmund Port, J., dated November 2, 1971 denying an application for a writ of habeas corpus without a hearing. On November 26, 1971 Judge Port granted a certificate of probable cause. We affirm the order below.
 
 
 2
 The appellant here was the unsuccessful suitor of Noreen Jones who had spurned his advances. For a period of three years thereafter he subjected the girl and her family to abuse and harassment. After a physical attack on the girl and her father, DiPiazza was charged with assault, committed to a hospital and eventually released on probation. Finally, in a public place in the presence of four witnesses, the 20 year old defendant made open threats and shot the 17 year old girl seven times. He was indicted for murder in the first degree and pleaded not guilty by reason of insanity. A report of two psychiatrists pursuant to then section 662 of the New York Code of Criminal Procedure (now N.Y.Crim.Proc.L. Sec. 730.30 (McKinney's Consol.Laws, c. 11-A, 1971)) found him capable of understanding the charges against him and making his defense.
 
 
 3
 The appellant was convicted of murder in the first degree after a trial by jury in the County Court, Herkimer County, New York. He was sentenced to a term of life imprisonment on May 25, 1965 and is presently serving this term in Auburn Correctional Facility, Auburn, New York. On appeal the judgment of conviction was unanimously affirmed without opinion by the Appellate Division, People v. DiPiazza, 27 A.D.2d 903, 281 N.Y.S.2d 743 (4th Dept. 1967) and thereafter unanimously affirmed by the Court of Appeals, People v. DiPiazza, 24 N.Y.2d 342, 300 N.Y.S.2d 545, 248 N.E. 2d 412 (1969). The opinion of the Court of Appeals was written by Chief Judge Fuld and is of great assistance to this court. In applications for writs of habeas corpus under 28 U.S.C. Sec. 2254 we are often faced with the claim that a state court did not consider or gave scant attention to the issues not relied upon as a basis for relief. In this case we have no difficulty in making a determination since the opinion examines in detail and carefully disposes of the major issues which the appellant now seeks to relitigate.
 
 
 4
 His major argument on appeal was that he was denied due process of law and the right to a fair trial because of pre-trial publicity and the prejudice of the small community of Herkimer County (pop. 68,000). DiPiazza had made a motion for a change of venue which was denied by the Appellate Division, Fourth Department. This claim was given full consideration in the opinions of both Chief Judge Fuld and Judge Port (unreported). There is no showing of passion or prejudice here at all; in fact the pre-trial publicity was objective and that which is relied upon ceased several months before the trial. It is now urged that the Court of Appeals had relied on erroneous information as to the number of prospective jurors who expressed an opinion as to the guilt or innocence of the defendant on the voir dire. The appellant never challenged the data relied upon by the prosecutor in his state court appeals, and the voir dire could have been transcribed and added to the record on appeal under then section 485(3) New York Code of Criminal Procedure. In any event, we have now had opportunity to examine the available record of the voir dire and find no significant information which would lead to any different result than that found by the courts below.[1] It is more significant that the defense only exercised 22 of the 30 peremptory challenges allowed in selecting the trial jury and only two of the six permitted in selecting the alternates. Moreover, counsel for the defense expressed his satisfaction with the jury which was impanelled.
 
 
 5
 Appellant's contention that section 663 of the New York Judiciary Law, McKinney's Consol.Laws, c. 30, is unconstitutional since it systematically excludes persons from the jury who have scruples against the death penalty, is without merit. The statute complies with Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968) because it provides for no automatic exclusion but adds the requirement that such scruple prevent the juror from finding a guilty verdict.[2] Moreover, no sentence of death was given here, and hence Witherspoon is not applicable, Bumper v. North Carolina, 391 U.S. 543, 545, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968).
 
 
 6
 We have carefully examined all of the appellant's other contentions and find that they have been properly disposed of in the opinions of the Court of Appeals and the District Court and further find that they do not have constitutional significance.
 
 
 
 [1]
 Chief Judge Fuld stated that of the 222 potential trial jurors actually examined (excluding alternates) less than 25% expressed an opinion as to the guilt or innocence of the defendant. Petitioner asserted in his application that the correct figure is closer to 50%. While the record does indicate that over 50% were challenged by either the prosecution or the defendant "for cause", it does not reveal the nature of the cause. Whether the challenges resulted from the jurors' familiarity with the case due to the surrounding publicity, as petitioner argues here, or whether they were due to the jurors' acquaintanceship with the defendant, the victim or their families cannot now be ascertained. Judge Port was justified in not holding an evidentiary hearing to establish the correct percentage since the percentage would not be persuasive of widespread prejudice in view of the other unquestioned facts before the court
 
 
 [2]
 N.Y. Judiciary L. Sec. 663 (McKinney 1968) provides:
 No person shall be selected to serve as a grand juror or as a trial juror in a criminal action, the punishment for which is or may be the infliction of the death penalty, who has stated in his statement to the commissioner that he has conscientious scruples against the death penalty which would prevent him from finding a verdict of guilty of any crime punishable by death. (Emphasis added)